Sammie JACKSON, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 16631.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 27, 1961.

Decided Feb. 8, 1962.

---

Mr. David M. Clinard, Washington, D. C., with whom Mr. Philip A. Gragan, Washington, D. C. (both appointed •by the District Court), was on the brief, for appellant.

Mr. William H. Collins, Jr., Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Nathan J. Paulson, and Thomas M. O'Malley, Asst. U. S. Attys., were on the brief, for appellee. Mr. Arnold T. Aikens, Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, Chief Judge, and WASHINGTON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

This appeal is taken from convictions on two counts of an eight count indictment charging housebreaking and grand larceny under 22 D.C.Code Ann. §§ 1801, 2201, and 2202. The appellant's chief contention is that the police lacked probable cause to arrest him without a warrant and that his timely motion to suppress certain evidence seized by the arresting officers when he was arrested should therefore have been granted.

The circumstances leading up to appellant's arrest are as follows: Police recovered from a local pawnshop a Smith & Wesson pistol which was one of a number of items, including a rhinestone bracelet, reported as stolen in a housebreaking two weeks earlier. The pawnshop records showed that one John Keyes had pawned the pistol. Police went to Keyes' apartment to question him. His friend Ethel Curtis, who was at the apartment with Keyes, told the police out of the presence of Keyes that the appellant, Sammie Jackson, had given Keyes the pistol. Keyes, when confronted with what Ethel Curtis had said, confirmed the statement that Jackson had given it to him. The woman also told police that Jackson was a "bad one" who had been "locked up" in Baltimore a few weeks before for carrying a gun. At police request she then telephoned Jackson and ascertained that he was at his home in Washington. Keyes, but not Ethel Curtis, then accompanied the police in a patrol car to Jackson's apartment. The police in the meantime had called for another squad car to proceed directly to meet them at the Jackson home. Enroute from Keyes' home to Jackson's home the police read to Keyes a list of the stolen items and upon reciting and describing the rhinestone bracelet they were told by Keyes that he

had seen a bracelet corresponding to that description in a hall closet at appellant's apartment. Since men do not habitually keep such bracelets in their closets, this was an important element in the "intelligence estimate" which the police were about to make.

This, in sum, was the information in the possession of the police when they reached Jackson's home. Standing alone no one factor of information constituted probable cause. The question is whether considered together all the information was enough.

The police, still accompanied by Keyes, met Jackson at his door[1] and arrested him. Keyes pointed out the closet where he had seen the rhinestone bracelet. In two suitcases found in that closet the police recovered large quantities of stolen property which had previously been reported to them by the victims. Shortly thereafter and before they had Jackson under actual physical restraint, he plunged through a closed window, escaped and was not apprehended for some time. On this appeal appellant contends that the police had no probable cause to arrest him at the time they confronted him in his apartment.

We have indicated on many occasions that there are few absolutes in the area of the law dealing with what constitutes probable cause for arrest. We have also emphasized from time to time that probable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of arrest. The question to be answered is whether such an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested. See Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958). The law recognizes that mistakes in judgment will occur.

"Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

Recently Judge Prettyman speaking for this court, in Dixon v. United States, No. 16263, Oct. 19, 1961, 111 U.S.App.D.C. 305, 296 F.2d 427, said:

"The decisive factors are that all the circumstances are to be considered together, in a sum total; that the circumstances to be considered are those of the moment; that the impression to be evaluated is the impression upon the mind of a reasonably prudent police officer; and that the impression made upon him by the circumstances is a reasonable belief that a crime has been, is being, or is about to be committed."

While the process of reaching a conclusion that probable cause for an arrest exists calls for exercise of judgment and is in that sense a judging process, it is, of course, not a judicial process. It is,

1. When the police first knocked on Jackson's door and asked him about delivering a gun to Keyes, Jackson denied it. It was at that point the police then brought Keyes in and confronted Jackson and Keyes identified Jackson as the man from whom he had received the gun. Appellant then admitted giving Keyes the gun. Keyes then specifically pointed out the closet where he had seen the rhinestone bracelet.

rather, a very specialized form of judgment, an expertness in making evaluations under pressure in circumstances where an untrained person might well be at a loss. The police are entitled to rely upon hearsay which would be inadmissible in judicial proceedings, and upon various other factors which would not be admissible in evidence against an accused on trial. Rumor, gossip, common conversation, general reputation, hearsay, all these may well go into the police evaluation of the total situation which confronts them. As information is accumulated in the process of an investigation such as here, the police must make not a single evaluation but a series of judgments. Inevitably this is something of a "balance sheet process." Some of the information, and some of the factors which they observe, will add up in support of probable cause; some, on the other hand, may undermine that support. Finally, at some point the officer must make a decision, culled from a balance of these negatives and positives, and then act on his decision.

In the circumstances disclosed by this case we think the police decided and acted properly. With the possibility that Keyes' girl friend would warn Jackson by phone before the police arrived at his home, obtaining a warrant was not practical. Had there been a legitimate and feasible way to prevent the woman from so communicating with the appellant and thus offset the risk of such a communication, that factor would introduce an additional element to consider as to the necessity for securing a warrant. Police, of course, had no basis for putting the woman under any restraint.

The total information available to the police officers, including the separate accusations of appellant by two persons, Keyes' recollection of a rhinestone bracelet in the appellant's closet which matched the description of a similar object on the list of stolen property, and the reasonable inferences to be drawn from all this, must be considered as a whole. Thus considered, the evidence reasonably warranted a belief on the part of the police officers that Jackson had probably committed the felonious acts in which the pawned gun and the rhinestone bracelet were originally stolen. The practical necessities of pursuit of appellant before he might be warned and disappear justified a belief that the circumstances compelled prompt action without an arrest warrant. See Campbell v. United States, 110 U.S.App.D.C. 109, 289 F.2d 775 (1961); Jones v. United States, 106 U.S.App.D.C. 228, 271 F.2d 494 (1959), cert. denied, 362 U.S. 944, 80 S.Ct. 809, 4 L.Ed.2d 771 (1960).

Affirmed.

WASHINGTON, Circuit Judge (concurring in the result).

I agree that probable cause for the arrest of Jackson existed in this case, and that the search which followed was incidental to the arrest and was proper, under the standards laid down in Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958), and Dixon v. United States, 1961, 111 U.S. App.D.C. 305, 296 F.2d 427, and the cases therein cited. Those standards should be strictly observed by the police, and the courts should view adversely any departure from them.