Jasen, J. (dissenting).
It must be remembered that we are not considering the quantum of proof required for conviction of a crime. Rather, the issue facing the court is whether the arresting officer had reasonable grounds or probable cause for making an arrest and the incidental search.
Probable cause is not a philosophical concept existing in a vacuum■—-it is a practical and factual matter viewed in terms of the actual circumstances existing at the moment of arrest. As its very name implies, probable cause deals with the probabilities confronting police officers. ‘ ‘ These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.” (Brinegar v. United States, 338 U. S. 160, 175.)
*425 Police officers patrolling the streets do not prearrange the setting within which they operate. They do not schedule their steps in the calm and reflective atmosphere of some remote law library. Events occur without warning and policemen are required as a matter of duty to act as a reasonably prudent policeman would under the circumstances as those circumstances unfold before him.
I adhere to the view that, when a police officer’s training and experience in a specialized field is brought to bear, the reasonableness and prudence of his conduct cannot be divorced from the knowledge and expertise that he possesses relative to the observed events and the modus operandi of criminals. Conduct that is objectively innocent in the abstract or to the untrained layman is not shielded from the reasonable inferences that an experienced police officer may make. This court has acknowledged the specialized expertise of trained law enforcement officials (People v. Valentine, 17 N Y 2d 128, 132; People v. Brady, 16 N Y 2d 186, 189) as have the Federal courts (Terry v. Ohio, 392 U. S. 1, 27, 30; Bell v. United States, 254 F. 2d 82, 86 [D. C. Cir., 1958], cert. den. 358 U. S. 885; Jackson v. United States, 302 F. 2d 194, 196 [D. C. Cir., 1962]; cf. People v. Corrado, 22 N Y 2d 308, 313-314).
The question, therefore, is whether a police officer ‘ ‘ in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested. ’ ’ (Jackson v. United States, supra, at p. 196; People v. Valentine, supra; People v. Brady, supra; Code Crim. Pro., § 177, subd. 1; Bell v. United States, supra.) And in analyzing the nature of a police officer’s experience, due consideration should be given to his ‘ ‘ trained instinctive judgment operating on a multitude of small gestures and actions impossible to reconstruct.” (Harlan, J., concurring opn. in Sibron v. New York, 392 U. S. 40, 78.)
Here, we are asked to judge the reasonableness of the actions taken by an experienced narcotics detective — an expert in the various circumstances surrounding unlawful traffic in narcotic drugs. In fact, the detective’s expertise was so well established that defendant made no effort at trial to impeach his testimony. During the four years the detective had been with the Narcotics *426 Bureau, he had made some 300 arrests for violation of the narcotics laws, approximately 70% of which had resulted in convictions. Moreover, for three of his four years with the Narcotics Bureau the detective had operated in the same area in which defendant was arrested. Most significantly, the detective had learned the modus operandi of narcotic sellers in the area. Thus, he knew that the narcotics seller did not normally carry narcotics on his person, but would first engage a potential buyer in the streets and take his order and money for a certain quantity of narcotics. The seller would then go to the place where he had previously stored the narcotics, take the ordered amount, return to buyer and complete the deal.
Therefore, upon sighting defendant with a suspected narcotics addict following, step by step, this established modus operandi, it would have defied reason and common sense for the detective, considering his extensive knowledge of the manner in which drugs were sold and of the individual defendant was with, not to conclude that defendant had in fact bought narcotic drugs. Indeed, it was the detective’s recurring experience with this modus operandi of a narcotics sale that wisely deterred him from intercepting the parties when the suspected addict first left defendant to get the drugs.
In People v. White (16 N Y 2d 270), this court held that there was probable cause for an arrest without a warrant upon “ a showing that a known addict holding money in his hand and talking to the suspected drug peddler quickly put the money away and left the scene when the detective approached.” (Id., at p. 273.) Likewise, in People v. Smith (21 N Y 2d 698), probable cause was found in the observations by a police officer of unknown persons knocking on an apartment door and, after short conversations with the occupants, handing money to them. Although the conduct observed by the police officers in White (supra) and Smith (supra) may be 'objectively consonant with innocence, it gave rise to probable cause when examined from the viewpoint of an experienced and knowledgeable police officer.
When the conduct of defendant and the suspected addict are viewed in light of the totality of the detective’s observations, knowledge and expertise, it is clear that it was reasonable for the detective to believe that a crime had been committed. We *427 require law enforcement officials to be reasonable; we too must be reasonable in applying this standard.
Accordingly, the judgment of conviction should be affirmed.
•Chief Judge Fuld and Judges Burke, Bergan and Keating concur with Judge Breitel; Judge Jasen dissents and votes to affirm in a separate opinion in which Judge Scileppi concurs.
Judgment reversed and the information dismissed.