**UNITED STATES, Appellant,**

v.

**Robert Harmon CUMBERLAND, Appellee.**

No. 5085.

District of Columbia Court of Appeals.

Argued Jan. 5, 1970.

Decided Feb. 17, 1970.

Warren R. King, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and John F. Evans, Asst. U. S. Attys., were on the brief, for appellant.

Sarah E. Brown, Washington, D. C., for appellee.

John Vanderstar, J. Dean Heller, and Ralph J. Temple, Washington, D. C., counsel for American Civil Liberties Union Fund, filed a brief as amicus curiae urging affirmance.

Before HOOD, Chief Judge, and GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This is an appeal by the United States [1] from the suppression for use as evidence

_____

1. *See* D.C.Code 1967, § 23–105(b) (Supp. II, 1969).

of marijuana ceased from Cumberland incident to his arrest. Because the suppressed contraband[2] is substantial proof of the pending charge, the Government may appeal, and indeed must prevail if its prosecution is to go forward.

Cumberland was arrested without a warrant on June 23, 1969, for disorderly conduct. In the estimation of the officer, who was patient and sensitive to the delicate situation[3] created by Cumberland's bellicose conduct, he was finally left with no other choice than to make an arrest. The officer, on foot patrol, approached a sidewalk restaurant from around a corner. As he did so, he heard a loud argument in process. The language was punctuated with profane expressions including one of recent vogue which is often abbreviated for convenience as "M.F." The owner of the restaurant asked the officer to remove those who were arguing. The group, including Cumberland, was asked to leave peacefully. The officer also seized a bottle of liquor from the belt of one of the men. Cumberland claimed it was his bottle by exclaiming, "Hey, [M.F.], where are you going with my jug?" He continued to be profanely loud and boisterous. In order to avoid a public "scene" or "incident", the officer asked Cumberland to step into a nearby alley. At this point, Cumberland began goading the officer with statements challenging the officer to arrest him. Cumberland followed the officer from the alley to a point some distance away and across from a bus terminal. Despite repeated admonitions to break off the confrontation and go in peace, Cumberland continued with his challenge in an increasingly heated tone. He charged that the officer did not have the "[M.F.] guts" and was, in less polite terms, not possessed of sufficient virility to "lock him up." Cumberland also made a vile dispositive comment about "the judge", apparently referring to any judicial officer he might be brought before if arrested for his conduct. The officer continued his admonition for Cumberland to go home. He said, "If you can't behave yourself, go on home. I don't want to see you get in trouble." The officer also offered to take him home. Cumberland's conduct culminated in a crescendo sufficient to cause eight or ten people to approach from the bus terminal.[4]

When Cumberland was searched after being arrested, a piece of metal foil fell from his left-front pocket. It was recovered and its contents later testified positively as marijuana.

■ Appellee urged before the hearing judge that he was not lawfully arrested because no misdemeanor was committed in the presence of the arresting officer.[5] Appellee relied upon Williams v. District of Columbia, D.C.Cir., 419 F.2d 638, (decided June 20, 1969),[6] which, he says, limits the type of conduct possessing the attributes of the offense. The hearing judge, at appellee's urging, ruled that:

> A crime has not been proven beyond a reasonable doubt. There was [therefore] no probable cause to arrest for disorderly conduct.

The application of this standard was error. Legality of an arrest in our jurisprudence

2. See D.C.Code 1967, § 33–402.

3. The hearing judge characterized him as a "good officer trying to do the right thing." He described Cumberland's conduct as "persistent and improper."

4. Although the record reveals that the officer was not fearful for his own safety (he was accompanied by his partner), we think the testimony could support a conclusion that a breach of the peace was threatened or probable. The officer "didn't want to create an *incident*. [He] wanted to get him off the streets." (Emphasis supplied.)

5. D.C.Code 1967, § 4–140(a) (Supp. II, 1969).

6. *But see* n. 4, *supra*.

hinges on conclusions derived from reasonable probabilities, not absence of doubt, which reasonable men may entertain. Since the hearing judge permitted and conducted a full and exhaustive inquiry into the facts surrounding the arrest[7] and articulated his view that the only believable version was that of the officer, we see no need to remand for another hearing.[8] Accordingly, we reverse the order of suppression and remand with instructions to proceed with the trial.

◼ Not only did the hearing judge confuse his function and that of the evidence presented, he also confused the nature of "the tribunals which determine" the issues of probable cause for arrest and search and of guilt or innocence.[9] Draper v. United States, 358 U.S. 307, 312, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). At a time when some have been heard to say that certain areas of criminal law are too fluid to give rise to needed definiteness, it may be stated with certainty that there is one basic rule in the law of arrest— that is, that the magistrate or the arresting officer need not have evidence before him sufficient to establish guilt beyond a reasonable doubt. See Draper v. United States, *supra*; Brinegar v. United States,

338 U.S. 160, 172–173, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Bailey v. United States, 128 U.S.App.D.C. 354, 357–358, 389 F.2d 305, 308–309 (1967); Washington v. United States, 92 U.S.App.D.C., 31, 202 F.2d 214 (1953), *cert. denied,* 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377 (1953). It is enough if the officer "in the particular circumstances, conditioned by his observations and information * * * reasonably could have believed that a crime had been committed by the person to be arrested." Jackson v. United States, 112 U.S.App. D.C. 260, 262, 302 F.2d 194, 196 (1962).

◼ We see no reason why these principles should not govern in cases of arrest without a warrant where the offense, felony or misdemeanor, is committed in the officer's presence. Appellee attaches significance to D.C.Code 1967, § 4–140(a) (Supp. II, 1969), which permits members of the Metropolitan Police Department to arrest without a warrant, with certain exceptions, only if the person

* * * commits, or threatens or attempts to commit, in the presence of, or within the view of, such officer or member any breach of the peace or offense directly prohibited by an Act of

---

7. Appellee also urges for the first time on appeal that the scope of the search was beyond permissible bounds. Since this point was not considered at the hearing and facts relating thereto were not completely adduced, we do not consider it.

8. In view of the expressions as to credibility, we observe that they are certainly supported by the record and could never be characterized as plainly erroneous, under D.C.Code 1967, § 17–305(a). Appellee testified he was arrested in the alley and taken to the street; that he did not challenge the officer to arrest him and that the marijuana pack was placed in his pocket by the officer. The hearing judge concluded that Cumberland "was a little twisted with rum and inebriated with beer. I am convinced he doesn't know what happened."

As to the officer, the judge stated: "This is a truth-telling officer. Let's not leave any doubt in the minds of counsel.

I believe this officer will tell it like it is." The judge also observed during the hearing that Cumberland was arrested "when the defendant said, 'Here are my wrists; you don't have the guts to lock me up.' He [the officer] let him go for the prior conduct—[in the alley]."

9. It is an entirely different question whether, if prosecuted for disorderly conduct, appellee would have been successful in asserting, under Williams v. District of Columbia, *supra,* that the conduct did not fall within the statutory proscription. We note, however, that the officer, with commendable patience and forbearance, perhaps dictated by knowledge of the considerations announced in *Williams* three days earlier, tolerated appellee's conduct to a point where he reasonably could have feared serious violence from Cumberland as well as from the gathering crowd. We also note that appellee made no claim that his arrest was a sham.

Congress or by any other law in force in the District [of Columbia].

He argues that this language supports the view that something more than probable cause is required. We disagree.

■ A police officer can hardly be expected to function effectively if he must apply the criterion the courts apply at criminal trials to everyday situations that confront him on the street. Indeed, he is not required to anticipate changes in the law when deciding whether to make a warrantless arrest. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Worthy v. United States, 133 U.S. App.D.C. 188, 409 F.2d 1105 (1968). It makes no sense then to have the validity of warrantless arrests turn on whether reasonable men may have a reasonable doubt as to the ultimate guilt of the person arrested—and that is what reasonable doubt is all about. See Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232 (1947). No policeman should have to decide before making an arrest whether what he has just seen or heard would give rise to " 'such a doubt as in the graver, more important transactions of life would cause an ordinary and prudent person to hesitate and pause.' " [10] That is a decision for judges and juries after all admissible evidence has been adduced.

■ Notwithstanding that subsections (b) and (c) of D.C.Code 1967, § 4–140 (Supp. II, 1969), permit arrest for certain specified misdemeanors on "probable cause," it cannot be concluded that Congress intended to alter the basic law of arrest by requiring under subsection (a) more than probable cause that the conduct observed amounts to a misdemeanor and a breach of the peace. To hold otherwise would be to convert a proceeding to determine probable cause into one for decision on guilt or innocence. If, under § 4–140(a), the issue of guilt or innocence determined, perforce, the legality of the arrest in mis-

demeanors, then legality of arrests without a warrant for felonies would be governed by a completely different standard. It is obvious that no such result was intended. Moreover, a shadow on questions of civil liability would be unwarrantedly cast on long and properly settled law. Cf. Prieto v. May Department Stores Co., D.C.App., 216 A.2d 577 (1966). See also, Pierson v. Ray, supra.

Reversed and remanded.

---

10. Scurry v. United States, 120 U.S.App.D.C. 374, 375, 347 F.2d 468, 469 (1965).