239 So.2d 867 (1970)
STATE of Florida, Appellant,
v.
Joseph PROFERA and Richard Van Reich, Appellees.
No. 70-530.
District Court of Appeal of Florida, Fourth District.
October 9, 1970.
Daniel T.K. Hurley, Asst. County Solicitor, West Palm Beach, for appellant.
Robert P. Foley and J. Brian Brennan, of Foley & Brennan, West Palm Beach, for appellees.
WALDEN, Judge.
The State brings this interlocutory appeal under F.S. 1967, section 924.071, F.S.A., for the purpose of reviewing an order of the trial court which granted the defendant's motion to suppress certain physical evidence taken from the defendant's person. We reverse.
Defendant was charged with conspiracy to commit a felony, to wit: violation of the narcotics law, F.S. 1967, section 833.04, F.S.A. and with one count of violation of the narcotics law, F.S. 1967, section 398.03, F.S.A. Defendant plead not guilty and asked for a trial by jury.
The parties to this appeal are agreed as concerns the posture of the case, the facts, and are not in disagreement as concerns the law of the case. The dispute, or conflict, arises when the facts and the law are joined as to the result derived.
The issue is whether or not the facts observed by certain narcotic agents were sufficient to constitute probable cause to arrest and search the defendant.
On February 6, 1970, sometime after eight p.m., four narcotics agents from the Palm Beach County Sheriff's Office were conducting a surveillance of the area around the Carefree Theater on South Dixie Highway in West Palm Beach, Florida. The agents were grouped in pairs. Sheridan and Hillary were concealed behind a wall to the east of the theater, while Agents Perez and Vidal were in a car across from the theater. From a distance of thirty to forty yards, Sheridan observed four individuals including appellee, walk from the theater toward the south parking lot. As they neared the parking area, a dark Chevrolet pulled into the lot *868 and one of the four individuals, Mr. Allen, approached the car. After some conversation, one of the occupants of the car reached into his back pocket and pulled out "what appeared to be a wallet. Allen reached in his pocket and pulled out a baggie type bag. He handed it to the guy in the * * * (car) * * * (and in return received) what appeared to be money." Sheridan believed this to be a "narcotics transaction," and when the four individuals entered a white car and left the area, he conveyed this information to Agents Perez and Vidal.
Perez and Vidal followed the white car in one vehicle while Sheridan and Hillary followed in another. The police cars were unmarked and were equipped with transmitting and receiving equipment. They followed a route which eventually headed north on South Olive Street, a one-way, three-lane road.
Traffic halted for a red light at the intersection of Datura and South Olive. This allowed Perez and Vidal's vehicle to come abreast of appellee's vehicle. Vidal was seated in the right front passenger section of his car, approximately eleven feet from appellee. A street light was overhead and additional lighting was supplied by the fixtures from a nearby bank. For the next minute to a minute and a half Vidal riveted his attention on appellee, and observed the following:
Appellee Profera was seated in the rear, right of the car. "Mr. Profera put it to his mouth and just held it. He did not stick it in his mouth as you would normally when you smoke a cigarette. He held it to his mouth slightly opened and drew in very deeply holding his breath. He passed * * * (the) cigarette to the fellow on his left. He continued to hold his breath. After a few moments he exhaled. Very little smoke came out * * *. The cigarette was (passed) back to him." When Profera held the cigarette to his mouth he cupped it "so that practically the whole cigarette (was) contained in the cup of * * * (his) hand."
During the foregoing, Agents Sheridan and Hillary were in a vehicle directly behind the appellee's car. Via radio, Vidal told Sheridan what he had just viewed. Perez and Vidal pulled back and let Sheridan and Hillary come abreast of the white car. Sheridan looked into the rear of the vehicle and "observed Profera take a drag of the cigarette  His hands were cupped." Then he saw "Profera pass a cigarette to the passenger sitting on his left. This subject took a drag and passed it back to Profera." The "passing action" and other facts listed, caused Sheridan to believe that a marijuana cigarette was being smoked and he conveyed this impression to the other agents.
At this point in time, Senior Agent Perez determined to stop appellee's vehicle but cautioned the agents to wait until they were in lighter traffic. Appellee's car was stopped just short of Eleventh Street. As Vidal alighted from the pursuit vehicle he observed "Mr. Profera pinch this cigarette that he had in his hand, * * * and stick it down between the seat. * * *" Vidal approached the right front door of the car and ordered the passenger there to open the door. As he did so, "a heavy, heavy odor of marijuana * * *" came forth. Vidal reached into the car, recovered the warm cigarette and notified the passengers that they were under arrest. Appellee's person was searched moments later incident to this arrest. Contraband  the subject matter in question with this appeal  was found in Mr. Profera's possession.
The trial court found that the foregoing testimony of the narcotics agents was true, but found that the facts they related were insufficient to create probable cause. Thus, we need not be concerned with the right of the trier of the facts to accept and reject and assign weight to the credibility of the witnesses.
The law in Florida is that probable cause to arrest exists where a reasonable *869 man, having the specialized training of a police officer, and reviewing the facts known to the arresting officer prior to the actual time of arrest, would come to the conclusion that a felony is being, or has been, committed by the person to be arrested. Rogers v. State, 1947, 158 Fla. 790, 30 So.2d 625; Diaz v. State, Fla. 1949, 43 So.2d 13; Nelson v. State, Fla.App. 1966, 188 So.2d 353.
In Jackson v. United States, 1962, 112 U.S.App.D.C. 260, 302 F.2d 194, it was stated that:
"* * * (P)robable cause is not to be evaluated from a remote vantage point of a library, but rather from the view-point of a prudent and cautious police officer on the scene at the time of arrest. The question to be answered is whether such an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested."
Also, in Davis v. United States, 1969, 133 U.S.App.D.C. 172, 409 F.2d 458, it was said:
"The test of probable cause is not what reaction victims  or judges  might have but what the totality of the circumstances means to police officers. Conduct innocent in the eyes of the untrained may carry entirely different `messages' to the experienced or trained observer." (Emphasis supplied.)
Not to be likened, hopefully, to the childhood disputants whose force of argument consisted of "Yes, it is" * * * "No, it isn't," we are simply of the opinion, different from that of the able and experienced trial judge, that the totality of the evidence was abundantly sufficient to constitute probable cause under the mentioned test. From a review of the statements of the court made at the time of the ruling in question, we feel that the trial court placed too much emphasis, to the exclusion of other compelling circumstances, upon a comparison between a hand-rolled cigarette consisting on the one hand of "Bull Durham" tobacco and on the other of marijuana, and the difficulties of telling the difference.
Upon consideration, we are persuaded that the order in question must be reversed and the cause remanded for proceedings consistent with the views herein expressed.
Reversed and remanded.
REED and OWEN, JJ., concur.