**UNITED STATES of America**

v.

**Patrick H. DAVIS, Appellant.**

**No. 24937.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 3, 1971.

Decided March 16, 1972.

Mr. Howard M. Rensin, Washington, D. C., with whom Mr. Gerald Herz, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. Robert Richard Chapman, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and Broughton M. Earnest, Asst. U. S. Attys., were on the brief, for appellee.

Before McGOWAN and TAMM, Circuit Judges, and A. SHERMAN CHRISTENSEN,* U. S. Senior District Judge for the District of Utah.

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

**820**

PER CURIAM:

Appellant, charged with, and convicted of, violating federal narcotics laws,[1] challenges the admission of certain inculpatory drugs into evidence, urging that they are the fruit of an arrest lacking probable cause.[2] After careful consideration, we conclude that appellant's contention is untenable, and accordingly affirm.

### I.

During daylight at approximately 6:40 p.m. on March 27, 1970, Police Officers Gaston and Wingfield, wearing old armed forces jackets over their uniforms, traveling in an unmarked car, observed appellant among a group of five or six "shabilly [sic] dressed" men standing on the corner of Kenilworth and Eastern Avenues, a high crime area.[3] Tr. at 33. The individuals with appellant were, according to the officers, "in a kind of daze," "in a sleepy type mood," "twitchy and a little nervous." Tr. at 18, 60. Officer Gaston testified that some of them exhibited traits symptomatic of drug addiction such as the "common nod"[4] and appeared to act as "if the stuff [was] . . . coming down on

them."[5] He concluded that some of them seemed "to be under the influence of narcotics at that particular time" (Tr. at 33) and "from [his] past experience in watching these type of people, they were the stereotype of what we call 'junkie'." Tr. at 10.

Leaving this group, appellant proceeded to a vacant lot several feet away where he encountered a "very well dressed" man. Tr. at 34. According to the officers, whose views were unobstructed, both men, after furtively gazing about in a nervous and suspicious manner, struck a bargain at close range. Tr. at 19, 36. Appellant "slid" (Tr. at 19) an undetermined amount of paper currency to the second man, receiving in exchange a small brown package.[6] The officers did not immediately apprehend the two men due to traffic congestion in the area, however, after circling the block, Officer Gaston alighted from the car, produced identification, and announced that he was a policeman. Gaston, motioning to appellant, requested that he accompany him to the car. Whereupon, according to the narration at trial, appellant took several steps in the opposite direction and appeared "as if he was just about to run." Tr. at 12.[7]

---

1. 26 U.S.C. § 4704(a) (1964); 21 U.S.C. § 174 (1964).

2. The exclusionary rule announced in Weeks v. United States, 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and enveloping state criminal actions within its penumbra in Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), has been the subject of recent criticism. See Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 411, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Burger, C. J., dissenting). See also Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). For recent alternatives to the exclusionary rule see ALI Model Code of Pre-Arraignment Procedure § 8.02. (Tent. Draft No. 4, 1971).

3. Officer Gaston testified that this "is the highest crime area there is." Tr. at 7, 9, 38.

4. Well, what I mean by that is that some of them were in what we call the "common nod." When you are under the influence

of narcotics you tend to be, that is, lackluster, pretty close to an immobilized and you see the head goes up and down [sic].
Tr. at 34.

5. Well, if you ever are around these people and you see them, well some—if the stuff is coming down—this is the phrase they use—if it is coming down on them, they seem to be slumped over due to cramps that they have, and some of them have dark glasses, the common nod. This is the type picture you have. This is what the people were like.
Tr. at 10.

6. Officer Wingfield testified that appellant received a change purse from the other man. Tr. at 75.

7. . . . I pointed to the defendant and called him over to me. He ignored me and took a few steps away from me trying, he seemed as if he was just about to run. But the position we were in and by that time my partner got out of the driver's

However, appellant was soon boxed in by Officer Wingfield who had alighted from the other side of the car. Officer Gaston then inquired of appellant what he had in his back pocket, and appellant responded, "My change purse." Tr. at 13, 42, 66. A subsequent search disclosed the change purse and the presence of 73 heroin capsules therein.[8]

## II.

■ The Fourth Amendment protection against search and seizure has been construed to require probable cause for warrantless arrests and searches. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). The contours and salient principles of probable cause have been faithfully catalogued in a surfeit of decisional law. Probable cause exists when known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that an offense has been or is being committed. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). A significantly lower *quanta* of proof is required to establish probable cause than guilt. Draper v. United States, 358 U.S. 307, 311–312, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Probable cause does not emanate from an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a pristine "philosophical concept existing in a vacuum," Bell v. United States, 102 U.S.App.D.C. 383, 386, 254 F.2d 82, 85 (1958), but rather it requires a pragmatic analysis of "everyday life on

which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L.Ed. 1879 (1949). It is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training. Jackson v. United States, 112 U.S.App.D.C. 260, 302 F.2d 194 (1962). It is "a plastic concept whose existence depends on the facts and circumstances of the particular case." Bailey v. United States, 128 U.S.App.D.C. 354, 357, 389 F.2d 305, 308 (1967). *See* McCray v. Illinois, 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Beck v. Ohio, *supra*, 379 U.S. at 91, 85 S.Ct. 223; Brinegar v. United States, *supra*, 338 U.S. at 175–176, 69 S.Ct. 1302. Because of the kaleidoscopic myriad that goes into the probable cause mix "seldom does a decision in one case handily dispose of the next." Hinton v. United States, 137 U.S.App.D.C. 388, 391, 424 F.2d 876, 879 (1969). It is however the totality of these facts and circumstances which is the relevant consideration. Davis v. United States, 133 U.S.App. D.C. 172, 173, 409 F.2d 458, 459 (1969); Dixon v. United States, 111 U.S.App.D. C. 305, 306, 296 F.2d 427, 428 (1961). Viewed singly these factors may not be dispositive, yet when viewed in unison the puzzle may fit.

■■ Having considered the case at bar, we conclude that, although the factors viewed individually may not be dispositive of the probable cause issue, their sum total dictates an only conclusion. The testifying officers, experienced and learned in their professions,[9]

---

side of the car and came around—we had him boxed in [*sic*].
Tr. at 12.
  At the time that I got out of the car, the defendant was looking around as if he was going to run.
Tr. at 77. *See also* Tr. at 64.

8. Appellant testified that while he was "frisked" with his hands against the police cruiser, he observed Officer Wingfield pick up something behind him. Tr. at 110,

135–136. Moreover, he stated that he saw the change purse for the first time at the precinct. Tr. at 133–134, 137.

9. Officer Gaston, a member of the police force for approximately twelve months, had attended a training seminar given by the Bureau of Narcotics and Dangerous Drugs. He had been familiar with the neighborhood for about sixteen years. Officer Wingfield, working in the vicinity as a plainclothesman, for six to nine

related a number of highly suspicious circumstances surrounding the arrest to the court. Their individual experience reinforces our finding of probable cause and is a legitimate factor for consideration by this court. *See* United States v. Wabnik, 444 F.2d 203 (2nd Cir. 1971); Bell v. United States, *supra*, 102 U.S. App.D.C. at 386–387, 254 F.2d at 85–86. As we indicated in Davis v. United States, *supra*, 133 U.S.App.D.C. at 174, 409 F.2d at 460, "conduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." *See also* Bell v. United States, *supra*, 102 U.S. App.D.C. at 387, 254 F.2d at 86; Jackson v. United States, *supra*, 112 U.S. App.D.C. at 262–263, 302 F.2d at 196–197.

■ The officers testified that they observed appellant in the company of several "shabily [*sic*] dressed" individuals who appeared to be under the influence of narcotics. Clearly, this fact alone does not end our inquiry for we "have never countenanced arrest by association." Hinton v. United States, *supra*, 137 U.S.App.D.C. at 391, 424 F.2d at 879. Continuing their narration, the officers stated that appellant, nervously approaching an equally nervous well dressed man, stealthily "slid" money to the second man in exchange for a small brown package. Surreptitious passing of a package has been recognized as a possible element in establishing the probable cause mix. *See* Draper v. United States, *supra*, 358 U.S. 323, 79 S.Ct. 329 (Douglas, J., dissenting). Furthermore, there is some indication, admittedly unclear, in the record that appellant was

attempting to flee the scene of the crime.[10] Although flight has been a legitimate factor in a finding of probable cause, Green v. United States, 104 U.S. App.D.C. 23, 25, 259 F.2d 180, 182 (1958), it has not been considered a "reliable indicator of guilt without other circumstances to make its import less ambiguous." [11] Hinton v. United States, *supra*, 137 U.S.App.D.C. at 391, 424 F.2d at 879. A final factor in the instant mix is the geographical area of the crime. Although no presumption of guilt arises from the activities of inhabitants of an area in which the police know that narcotics offenses frequently occur, the syndrome of criminality in those areas cannot realistically go unnoticed by the judiciary. It too is a valid consideration when coupled with other reliable indicia or suspicious circumstances. *See* Munn v. United States, 283 A.2d 28 (D.C.App.1971); Peterkin v. United States, 281 A.2d 567 (D.C.App. 1971). We make this statement warily, for it is all too clear that few live in these areas by choice. A delicate balance must be struck between the right of the often-victimized innocent ghetto inhabitant to adequate, unhampered police protection and the rights guaranteed to him under the Fourth Amendment.

Viewing the total circumstances, judged in light of the officers' experience, we are of the opinion that there was a reasonable basis for their belief that a crime was being committed. We therefore conclude that the arrest was founded upon probable cause, thereby rendering the evidence admissible. Accordingly, the judgment is

Affirmed.

---

months had numerous opportunities to observe individuals under the influence of narcotics and witness narcotics transactions on the street.

10. *See* note 7, *supra.*

11. The low probative value and the care with which instructions on flight must be given has been the subject of much comment. *See, e. g.,* United States v. Vereen, 139 U.S.App.D.C. 34, 429 F.2d 713 (1970); Austin v. United States, 134 U.S.App.D.C. 259, 414 F.2d 1155 (1969).