281 So.2d 55 (1973)
STATE of Florida, Appellant,
v.
James Elwood BROOKS, Appellee.
No. 72-870.
District Court of Appeal of Florida, Second District.
July 25, 1973.
Robert L. Shevin, Atty. Gen., Tallahassee, and Richard C. Booth, Asst. Atty. Gen., Tampa, for appellant.
Judge C. Luckey, Public Defender, and Perry A. Little, Asst. Public Defender, Tampa, for appellee.
LILES, Acting Chief Judge.
The state interlocutorily appeals, pursuant to F.S. § 924.071, the granting of a motion to suppress. Patrolmen R.D. Bevan and J.D. Saunders of the Tampa Police Department were cruising in the 2600 block in the City of Tampa in the early *56 morning hours of July 29, 1972. They heard a sound like a gunshot in back of them but observed no one on the street. They went around the block and observed two black males sitting on the steps at 2610 Twenty-second Street. They walked up to the men and asked them if they had been there long and if they heard a shot. The men answered they had not. The officers then decided to frisk the subjects and found on appellee Brooks a .22 caliber pistol. The trial judge granted the motion to suppress the evidence as the fruit of an unconstitutional search.
The state has cited several cases, some of which have been decided since the enactment of the "stop-and-frisk law" and those cases correctly cite the law as it is in Florida. The facts in this case appear to measure up to the standards set in those cases and certainly comport with Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Thomas v. State, 250 So.2d 15 (1st D.C.A.Fla. 1971); State v. Padilla, 235 So.2d 309 (3d D.C.A.Fla. 1970) and other cases.
It is apparent that no hard and fast rule can be adopted which will in every instance guide the police as to when they may or may not frisk. It is clear, however, that they may not frisk simply because they saw two men sitting on the steps at 4:00 o'clock in the morning. This is true even though the officers were in a "high crime" area. The facts which indicate to police officers a probability of illegal activity must point more directly to the suspects who are subjected to the seizure than would those facts. If this were sufficient to justify a search anyone in such a so-called "high crime" area would be subject to a search just by virtue of his presence.
We must note, however, that Florida law does give police officers justification for such searches in circumstances where the "scene" is more localized, such as a bar. See, State v. Woodard, 280 So.2d 700, opinion filed July 25, 1973 (2d D.C.A.Fla. 1973); State v. Profera, 239 So.2d 867 (4th D.C.A.Fla. 1970); State v. Holmes, 256 So.2d 32 (1st D.C.A.Fla. 1971); State v. Padilla, supra.
A "high crime" neighborhood is not in itself a sufficiently incriminating fact as to give rise to an inference of guilt on the part of those found therein. However, these circumstances do contribute to justifying a search where there is additional and more directly suspicious evidence such as we have here.
The police officers were certainly justified in inquiring of the only two people in the area where the shot was heard. Upon inquiry the appellee replied that he had heard nothing like a shot although he and his friend said they had been there a while according to Officer Bevan. Considering the totality of the circumstances including the high crime area and time of day, the officers at this point were justified in frisking the two men at least for their own safety.
We would not expect the officers under these circumstances to turn their backs and walk back to their police car without assuring themselves that they would be safe in doing so. Nor would we expect them to walk backwards to their car keeping an eye on the two men. Neither action would have been reasonable. The search was the only reasonable thing to do and the evidence should not have been suppressed.
We therefore reverse for further proceedings consistent with this opinion.
HOBSON and McNULTY, JJ., concur.