396 So.2d 1210 (1981)
The STATE of Florida, Appellant,
v.
Jorge CABALLERO, Appellee.
Nos. 80-969, 80-970.
District Court of Appeal of Florida, Third District.
April 21, 1981.
*1212 Janet Reno, State Atty. and Stephen V. Rosin and Russell R. Killinger, Asst. State Attys., for appellant.
Irwin F. Kosdan, Miami, for appellee.
Before BARKDULL, NESBITT and BASKIN, JJ.
BASKIN, Judge.
In consolidated appeals, the State of Florida challenges an order of the trial court dismissing an information and an order suppressing physical evidence, photographic identification, and a confession. We reverse the order dismissing the information charging defendant with loitering and prowling (circuit court case number 80-2277); we reverse the suppression of the evidence, photographic identification and the confession in the robbery case (circuit court case number 80-2275).[1]
At approximately 1:00 a.m. Officer Leis, on routine patrol for the Dade County Public Safety Department, saw defendant's car parked with its motor running and its lights out at a gas station next to a Lums restaurant. Someone ran from the alleyway between the gas station and the closing restaurant and jumped into defendant Caballero's car. The car proceeded to the highway, its lights still out. The driver then made a U-turn, simultaneously turning on the lights. The officer followed the car and at a well-lit area ordered the occupants to stop. Upon request, defendant produced his driver's license and explained that he had gone to the gas station to make a U-turn. Since the explanation was inconsistent with the fact that someone had jumped into the car, Officer Leis asked the other occupant, Roy Thomas, to step out of the car for questioning. While arresting defendant Caballero for loitering and prowling, Officer Leis observed ammunition on the floor of the car, and in a subsequent search, found a .357 magnum under the front seat. Defendant was informed of his rights and taken to the police station where he was again advised of his constitutional rights.
At the police station, defendant noticed a twenty-dollar bill that had been taken from Thomas. He told Officer Leis the bill looked counterfeit and that he knew counterfeiting was a federal crime. When Officer Leis confirmed that counterfeiting was a federal crime, defendant related the circumstances preceding his arrest, despite his former disinclination to tell the officers what had occurred. He told the officers that he and Thomas had tried to "rob" Lums but had failed because the doors were locked. Detective Richardson, who had investigated an armed robbery at another Lums in North Dade, decided the description of the robbers matched the appearance of defendant Caballero and Roy Thomas. Detective Richardson asked defendant Caballero if he would like to make a statement concerning that robbery, and after again being advised of his rights, defendant Caballero confessed his role in the north Dade Lums' robbery.
Following a hearing, the trial court ruled that no probable cause existed to justify an arrest for loitering and prowling. Accordingly, the court suppressed as "fruit of the poisonous tree" the physical evidence and photo identification by the victims. During the hearing on his Motion to Suppress, defendant Caballero testified that he had confessed only because he was afraid that the counterfeit bill would implicate him in a federal crime. The court suppressed defendant's confession, finding that it was involuntary as well as the product of the illegal arrest.
First, we consider the state's contention that the physical evidence, photographic identification, and confession should not have been suppressed. It argues that Officer Leis had probable cause to believe defendant was loitering and prowling, Skelton v. State, 349 So.2d 193 (Fla. 3d DCA 1977); State v. Profera, 239 So.2d 867 (Fla. 4th DCA 1970), justifying his arrest.
*1213 Section 856.021(1), Florida Statutes (1979) defines loitering and prowling:
It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
Defendant argues that even though someone had been observed running toward defendant's car, and the motor was running but the lights were out, no probable cause existed to believe criminal activity had occurred. He asserts that the officer's failure to detain the driver for driving without lights or for making a U-turn indicated that he did not suspect criminal activity had occurred. Furthermore, he contends, the officer did not ask the passenger to explain what he was doing outside the car.
Probable cause exists "where the facts and circumstances within the officer's knowledge ... are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been committed." Benefield v. State, 160 So.2d 706, 708 (Fla. 1964); see Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). When surrounding circumstances suggest to a reasonable man threat or concern for public safety, law enforcement officials may act to avert a breach of the peace or a criminal threat. B.A.A. v. State, 356 So.2d 304 (Fla. 1978); State v. Ecker, 311 So.2d 104 (Fla. 1975). The officer must, however, afford a pre-arrest opportunity to the suspect to dispel alarm. Palmore v. State, 383 So.2d 309 (Fla. 2d DCA 1980); S.F. v. State, 354 So.2d 474 (Fla. 3d DCA 1978). Defendant Caballero's explanation failed to dispel the officer's alarm, and the totality of circumstances justified the officer's conclusion that probable cause to believe criminal activity was taking place existed. Thus, neither the evidence nor the confession should have been suppressed.
Turning to the second ground for the trial court's suppression of defendant's confession, we address the premise for the court's decision, the court's finding that the confession resulted from an implied threat. The state cannot establish guilt through statements obtained as a result of psychological or physical coercion. Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); Burch v. State, 343 So.2d 831 (Fla. 1977); Coffee v. State, 25 Fla. 501, 6 So. 493 (1889). A coerced confession offends due process of law. Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936); Brewer v. State, 386 So.2d 232 (Fla. 1980). Although defendant argues that his confession was produced through fear of prosecution for the federal crime of counterfeiting, we cannot agree that under the circumstances suppression was required. Defendant was advised of his rights, Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Burch v. State, supra, both at the time of his arrest and at the police station where he executed the rights' waiver form. It was defendant Caballero who initiated the conversation concerning the twenty-dollar bill and who admitted that he already knew counterfeiting was a federal crime. Officer Leis told defendant Caballero that instead of speaking to him, defendant should speak to Sergeant Dickson. When Sergeant Dickson and Detective Richardson asked defendant Caballero if he wanted to make any statement concerning the Lums' robbery, defendant replied that he did, and he was again advised of his constitutional rights. He later testified that he was not threatened and was advised of his right to a lawyer but did not wish to be represented.
Although psychological coercion may vitiate a confession, Reddish v. State, 167 So.2d 858 (Fla. 1964); McLaughlin v. State, 300 So.2d 38 (Fla. 3d DCA 1974), defendant was not deluded as to his true position. No improper or undue influence over his mind was exerted. Paulk v. State, 211 So.2d 591 (Fla. 2d DCA 1968). Confessions elicited from a defendant who is under mental distress not induced by outside sources, but which originates from defendant's own apprehensions, should not be rejected. *1214 Ebert v. State, 140 So.2d 63 (Fla. 1962); Cullaro v. State, 97 So.2d 40 (Fla. 2d DCA 1957).
Defendant argues that his earlier refusal to make a statement compels us to conclude that only an implied threat could have induced him to change his attitude and confess. Reviewing the totality of circumstances, however, we reach a different conclusion. Detective Dickson ceased his interrogation when defendant first indicated he did not wish to talk about the loitering and prowling arrest. Twenty-five minutes later, defendant was again warned of his Miranda rights before questioning regarding the unrelated robbery that had occurred earlier commenced. These factors lead us to reject defendant's contention that his confession was psychologically coerced. We hold that the trial court erred in suppressing defendant's confession on the ground that it was involuntary, see Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), as well as on the ground that it followed an illegal arrest.
Next, we find error in the trial court's dismissal of the information. Section 856.021(1) states:
It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. (emphasis supplied).
Count II of the information charged the defendant:
... did unlawfully loiter or prowl in a place ... at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable concern for the safety of the persons or property in the vicinity, to-wit: STAYING IN AREA OF CLOSED BUSINESS WITH AUTOMOBILE MOTOR RUNNING AND AUTOMOBILE LIGHTS OUT, in violation of 856.021, Florida Statutes. (emphasis supplied).
Defendant contends that "justifiable concern", the language contained in the information, reduces the state's burden of proving an "immediate concern" or "justifiable and reasonable alarm". We disagree.
Section 856.021 was enacted as a replacement for the vagrancy statute[2] after a Jacksonville ordinance patterned after that statute was held unconstitutional by the United States Supreme Court.[3] By using terms such as "alarm" and "concern", the legislature indicated its intent to limit the application of the statute so that constitutional rights of law-abiding citizens would not be infringed by the "unfettered discretion" of police, State v. Ecker, supra 311 So.2d at 107, who might use section 856.021 as a "catch-all criminal offense". State v. Ecker, supra at 111.
We are aware that loitering and prowling charges must be carefully drawn. The information contains two elements: (1) loitering or prowling in a place at a time or in a manner not usual for law-abiding individuals, and (2) loitering or prowling under circumstances that threaten the public safety. The information left no doubt as to the charge. The term "justifiable concern", as used in this information, advised defendant of the charge against him without reducing the state's burden of proof.
For these reasons, we reverse the dismissal of the information. In addition, we reverse the suppression of evidence, photographic identification, and confession and remand for further proceedings.
NOTES
[1] Defendant was also charged with carrying a concealed firearm. The trial court's dismissal of that count is not challenged on appeal.
[2] § 856.02, Fla. Stat. (1971).
[3] Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).