OPINION
This is an appeal from the Lake County Court of Common Pleas. Appellant, McKinley Jackson, Sr., appeals his conviction and sentence for possession of cocaine.
On December 1, 1998, appellant was indicted on one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the fourth degree. On December 12, 1998, appellant filed a waiver of his right to be present at the arraignment, and the court entered a plea of not guilty to the charge. On January 20, 1999, appellant filed a motion to suppress the evidence obtained. A suppression hearing was held on February 11, 1999. Patrolman Anthony Powalie ("Powalie") and Patrolman Eric Kacvinsky ("Kacvinsky") testified at the hearing. The trial court overruled appellant's motion to suppress on March 30, 1999. On July 1, 1999, a jury trial was held.
At the trial, the evidence revealed that Powalie of the city of Painesville Police Department was on routine patrol on September 19, 1998. At about 11:30 p.m., he was dispatched to an area of Liberty Street on a citizen complaint that a blue Chevy Celebrity driven by a male of unknown race was speeding through a parking lot. When Powalie arrived at the scene, he was unable to locate the vehicle in question at the address he was given by the dispatcher. However, Powalie did notice a blue Chevy Celebrity in a parking lot across the street. He also observed a male, later identified as appellant, walking by bushes near the blue Chevy Celebrity. According to Powalie, appellant "looked over at [him] and stopped." Powalie proceeded to enter the other parking lot and attempted to locate appellant. He exited his cruiser and noticed that the engine of the blue Chevy Celebrity was still warm. Powalie then returned to his patrol car and observed appellant in his rearview mirror. He informed dispatch that he would be speaking with appellant and backup was sent to the location.
Powalie approached appellant to ask him if he had seen anything suspicious in the area. Powalie testified that appellant seemed very nervous because "he was very jittery with his fingers, reaching around, * * * licking his lips quite a bit * * *." Further, Powalie stated that appellant was very defensive about the questions he was being asked. He could hear appellant taking quick breaths. Powalie indicated that as he took a step toward appellant, appellant took one step back. Kacvinsky, also a police officer for the city of Painesville, arrived as backup.
Kacvinsky testified that when he arrived where Powalie and appellant were located, he assumed a backup position. He advised Powalie that appellant had "a bulge in the back of his shirt." Powalie asked appellant if he had any weapons, and appellant replied that he did not. When Powalie asked appellant if he could be searched, appellant responded, "no, and at that time he made a very quick move * * * to his back." Powalie and Kacvinsky each grabbed one of appellant's arms to find out if the bulge was a knife or gun. From that point on, appellant became very combative and belligerent. Powalie and Kacvinsky tried to control appellant because he was trying to fight and resist and reach for his back pocket. Eventually they managed to handcuff appellant, and Kacvinsky located a torque screwdriver in appellant's back pocket. Appellant was charged with menacing and placed under arrest. Appellant continued fighting, but Kacvinsky searched his person and located a crack pipe, a prescription bottle with matter that was later determined to be crack cocaine, a razor blade, and rare coins. Appellant was transported to the Lake County Jail.
On July 2, 1999, the jury returned a verdict of guilty to the charge of possession of cocaine. On August 5, 1999, appellant was sentenced to serve eighteen months in prison, with thirty two days credit for time already served. Appellant timely filed the instant appeal and now asserts the following assignments of error:
 "[1.] The trial court erred to the prejudice of [appellant] when it overruled his motion to suppress.
 "[2.] The trial court erred to the prejudice of [appellant] when it failed to grant a mistrial upon the prosecutor's misuse of a prior conviction.
 "[3.] The trial court erred to the prejudice of [appellant] in convicting him against the manifest weight of the evidence.
 "[4.] The trial court abused its discretion by sentencing [appellant] to the maximum term of imprisonment for a felony of the fourth degree."
 In his first assignment of error, appellant claims that the trial court erred in overruling his motion to suppress.
The Fourth Amendment cannot be invoked unless the person has been "seized." In other words, before an officer's actions will be scrutinized under the constitutional provision, it must be shown that the officer restrained the citizen's liberty through the use of physical force, no matter how slight, or through a show of authority. Terry v. Ohio
(1968), 392 U.S. 1, 19. Thus, "* * * not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Id. at 19, fn. 16; State v. Johnston (1993),85 Ohio App.3d 475, 478.
A police officer may approach an individual for a consensual encounter, which is not considered a seizure for Fourth Amendment purposes. Florida v. Bostick (1991), 501 U.S. 429, 434. The hallmark of a consensual encounter is that a reasonable citizen must feel "free to decline the officers' requests or otherwise terminate the encounter."Id. at 439. A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." United States v. Mendenhall (1980),446 U.S. 544, 554. Factors suggesting that a seizure has occurred include the presence of multiple police officers, the displaying of a weapon by the police, the use of language suggesting that compliance with police requests is compelled, and the physical touching of the citizen.Id.
Here, the concepts of stop and frisk are also involved as a result of the underlying facts. In justifying an investigative stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. The assessment is to be judged against an objective standard. Id. at 21-22. "`An inarticulate hunch or suspicion is not enough. The officer must have a reasonable belief and specific facts upon which a reasonable suspicion could be based that [an individual] was violating or about to violate the law. Terry (* * *);Brown v. Texas (1979), 443 U.S. 47, * * *; Delaware v. Prouse (1979)440 U.S. 648, * * *.'" State v. Kish (Nov. 5, 1999), Lake App. No. 98-L-148, unreported, at 2, 1999 WL 1073615, quoting Mentor v. Webb (June 30, 1993), Lake App. No. 92-L-158, unreported, at 4; see, also, State v.Brantley (Dec. 1, 2000), Portage App. No. 99-P-0108, unreported, at 5, 2000 Ohio App. LEXIS 5616. The determination of a reasonable suspicion must be made in light of the totality of the surrounding circumstances.State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
Here, Powalie stated that he was dispatched to Liberty Street on a citizen complaint that there was a blue Chevy Celebrity speeding through a parking lot. Powalie stopped appellant to question him because he saw appellant in the parking lot where the car was located. As part of his investigation, Powalie conversed with appellant and noticed that appellant seemed very nervous. Based on these preliminary facts, we cannot conclude that appellant was seized at the moment that Powalie approached him and engaged in the initial contact. At that point, it was a consensual encounter for which Powalie was not required to have a reasonable suspicion of criminal wrongdoing.
Moreover, none of the Mendenhall factors suggesting coerciveness were present at that time in this case. Appellant was not surrounded by a multitude of police officers. Likewise, Powalie did not display a weapon to appellant. He also did not use language suggesting that appellant was compelled to comply with any order. In light of the circumstances surrounding the interaction, it is our view that appellant was not seized at the time Powalie initially approached him. Therefore, when considering the totality of the circumstances, the initial confrontation was not unconstitutional.
We must next determine if appellant's later detention was reasonable. It is well-settled law that a police officer does not have the authority to automatically conduct a frisk of a detainee when a valid investigative stop has been initiated. Kish, supra, unreported, at 3. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Bobo, 37 Ohio St.3d at paragraph two of the syllabus.
Furthermore, a police officer is permitted, under certain circumstances, to conduct a limited protective search of a detainee's person for concealed weapons. State v. Evans (1993), 67 Ohio St.3d 405,408. The purpose of this limited search is to allow a police officer to pursue his investigation without fear of violence; it is not intended to provide the officer with an opportunity to ascertain evidence of a crime.Id. The United States Supreme Court sets forth the standard for a "frisk" as follows:
 "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (Citations omitted.) Terry, 392 U.S. at 27.
 When police officers are conducting a lawful Terry
search for weapons, they may "seize nonthreatening contraband when its incriminating nature is `immediately apparent' to the searching officer through his sense of touch." Evans, 67 Ohio St.3d at 414, fn. 5, citing Minnesota v. Dickerson (1993), 508 U.S. 366. In Dickerson, the United States Supreme Court wrote:
 "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." Dickerson, 508 U.S. at 375-376.
 However, during a protective search, a police officer is prohibited from handling the object previously determined not to be a weapon in order to establish its incriminating nature. Evans, 67 Ohio St.3d at 414. Once an officer locates possible contraband, the "immediately apparent" requirement is at issue and must be satisfied. In State v. Halczyszak (1986), 25 Ohio St.3d 301, paragraph three of the syllabus, the Supreme Court of Ohio held that "[t]he `immediately apparent' requirement of the `plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." The United States Supreme Court has characterized probable cause as "a flexible, common-sense standard." Texas v. Brown (1983), 460 U.S. 730, 742. In Brown, the Supreme Court further stated that probable cause:
 "* * * merely requires that the facts available to the officer would `warrant a man of reasonable caution in the belief,' * * * that certain items may be contraband * * *; it does not demand any showing that such a belief be correct or more likely true than false. A `practical, nontechnical' probability that incriminating evidence is involved is all that is required." (Citations omitted.) Id.
 Moreover, probable cause must "be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of [the search or] arrest [and] guided by his experience and training." United States v. Davis (C.A.D.C., 1972), 458 F.2d 819, 821.
In the case at bar, Powalie testified that while he was asking appellant some questions, Kacvinsky arrived and advised him that appellant had a large bulge in his back pocket. They asked appellant if he could be searched, but he said no and then quickly reached for his pocket. The officers responded by controlling appellant's arms. Kacvinsky found a screwdriver in appellant's pocket. Appellant continued to fight with the officers, and he was very aggressive and hostile towards them. The officers testified that appellant continued reaching for his back pocket. Appellant was then placed under arrest. Kacvinsky conducted a more extensive search of appellant and found what appeared to be a crack pipe, a razor blade, a bottle with what was later determined to be cocaine in it, and rare coins.
Kacvinsky initially did a pat-down search of appellant because of the large bulge in his pocket. We note that under a Terry pat-down search, a police officer is not entitled to reach into a detainee's pockets or ask the detainee to empty his or her pockets on pure speculation that a weapon might be present. See Evans, 67 Ohio St.3d at 414-416. Yet, this is not a situation where Kacvinsky relied on pure speculation that appellant was carrying a weapon on his person. Rather, upon Kacvinsky seeing a large bulge in appellant's pocket and appellant's quick movement toward his back, Kacvinsky feared for his and Powalie's safety and decided to conduct a pat-down search to see if the bulge was a weapon.
We note that in conjunction with a valid arrest, an officer is permitted to conduct an extensive search to remove any weapons and seize evidence because the search is a reasonable way to secure the arrest, prevent escape, eliminate danger to the officer, and protect evidence.Chimel v. California (1969), 395 U.S. 752, 763. Hence, we conclude that the search in the present case was proper because it was incident to a lawful arrest for menacing. Prior to the arrest, the officers did not intrude on appellant's clothing. Accordingly, appellant's first assignment of error lacks merit.
In his second assignment of error, appellant maintains that the trial court committed an error by not granting a mistrial after the prosecution's misuse of a prior conviction.
In the case at hand, during the trial, the prosecutor made reference to appellant's 1976 burglary conviction. Appellant's attorney objected to the introduction of this prior conviction, and the trial court sustained his objection and instructed the jury to disregard the question referring to the conviction. Appellant requested a mistrial, but the trial court denied the request.
Evid.R. 609(A)(2) provides that:
 "* * * evidence that the accused has been convicted of a crime is admissible if the crime was punishable by * * * imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 Evid.R. 609(B) provides that evidence of a prior conviction that is more than ten years old is not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." That determination is within the broad discretion of the trial court. State v. Taylor (1997), 78 Ohio St.3d 15, 27.
Furthermore, the decision to grant or deny a motion for mistrial is also within the sound discretion of the trial court. State v. Garner
(1995), 74 Ohio St.3d 49, 59. Absent a showing that the accused suffered material prejudice, a reviewing court will not disturb the exercise of that discretion. State v. Sage (1987), 31 Ohio St.3d 173, 182. "Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Garner at 59.
Here, the trial court sustained appellant's objection to the line of questioning referring to the 1976 burglary conviction and ordered the jury to disregard it after concluding that the probative value of the evidence did not substantially outweigh the potential prejudicial effect. Further, appellant did not prove that he suffered material prejudice as a result of the one question raised regarding the prior conviction; nor, did he demonstrate that he did not receive a fair trial. Hence, it is our determination that the trial court did not commit an abuse of discretion. Appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant alleges that his conviction was against the manifest weight of the evidence. He also claims that the evidence was insufficient to sustain his conviction because the conviction was not supported by competent and credible evidence.
A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin
(1983), 20 Ohio App.3d 172, 175; see, also, State v. Thompkins (1997),78 Ohio St.3d 380, 387. In State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 11, we held:
 "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."' * * *" (Emphasis sic.)
In Schlee, this court has also stated that:
 "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 "`" * * * (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *"' State v. Davis (1988), 49 Ohio App.3d 109, 113." (Emphasis sic.) Id. at 10-11.
 In the instant matter, Powalie and Kacvinsky testified for the state, and appellant took the stand in his own defense. It is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In the case at bar, it is apparent that the fact finder gave credence to the state's witnesses. The state's case involved more than enough testimonial evidence upon which to convict appellant of the offense for which he was charged. The state demonstrated that appellant was in possession of cocaine through the testimony of Kacvinsky, which revealed that at the time he searched appellant, he found a bottle with what was later determined to be cocaine in it. The contents of the bottle that Kacvinsky discovered were analyzed by Lauren Vinsick, who testified at the trial that the substance removed from the bottle in appellant's pocket was cocaine. Thus, we conclude that the jury did not clearly lose its way or create a miscarriage of justice in finding appellant guilty of the charges. In addition, in our view, there was sufficient evidence presented by the state to convict appellant of possession of cocaine. Appellant's third assignment of error is without merit.
In his fourth assignment of error, appellant asserts that the trial court abused its discretion by sentencing him to the maximum prison sentence for a fourth degree felony.
A reviewing court will not reverse a sentence unless an appellant shows that the trial court is statutorily incorrect or that it abused its discretion by failing to consider sentencing factors. State v. Earle
(June 26, 1998), Lake App. No. 96-L-195, unreported, at 2, 1998 WL 553014. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
If a trial court imposes the maximum prison term, pursuant to State v.Edmonson (1999), 86 Ohio St.3d 324, the court must, either in the colloquy or in the judgment entry, "make a finding that gives its reasons for selecting the sentence imposed * * *." R.C. 2929.19(B)(2). R.C.2929.19(B)(2)(d) provides:
 "* * * If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term * * *."
R.C. 2929.14(C) provides that:
 "* * * [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * * and upon certain repeat violent offenders * * *."
 R.C. 2929.12 provides a general list of factors the trial court must consider in deciding whether an offender committed one of the worst forms of the offense or whether an offender posed the greatest risk of recidivism.
In Edmonson, 86 Ohio St.3d at 329, the Supreme Court of Ohio addressed the statutory requirements for imposing a maximum sentence. The court determined that "[i]n order to lawfully impose the maximum term for a single offense, the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)."
Further, this court has held that according to the new sentencing laws, the findings mandated by R.C. 2929.12 and R.C. 2929.14 must appear in the judgment or somewhere on the record in the sentencing exercise.State v. Boles (June 25, 1999), Ashtabula App. No. 98-A-0061, unreported, at 4, 1999 WL 454562. We have stated:
 "A sentence which repeats the language of R.C. 2929.14(E)(3) without any [indicia] of a consideration of the factors set forth would be insufficient. For a meaningful review, the record must contain some indication, by use of specific operative facts, that the court considered the statutory factors in its determination." State v. Kase (Sept. 25, 1998), Ashtabula App. No. 97-A-0083, unreported, at 2, 1998 WL 682392.
 In the case sub judice, when the trial court sentenced appellant it explained that appellant had six prior convictions, some past probation violations, and did not seem to display any remorse. This certainly satisfies an evaluation of the evidence by the trial court with the factor in R.C. 2929.14(C) that the offender would pose the greatest likelihood of committing future crimes. Furthermore, the trial court took into consideration the "activity that went on between the police officers and [appellant] at the time they [the officers] attempted and effectuated an arrest."
In our view, the trial court sufficiently made a finding regarding the recidivism factor in R.C. 2929.14(C) and considered all of the factors in sentencing appellant. Appellant's fourth assignment of error is not well-founded.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
__________________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J., GRENDELL, J., concur.