OPINION
This is an appeal from the Mentor Municipal Court. Appellant, Dustin Fedor, appeals his conviction of possession of marijuana.
Appellant was charged with one count of drug abuse, a misdemeanor of the third degree, in violation of § 139.01 of the Mentor Municipal Ordinance. On August 16, 1999, at the initial appearance, appellant entered a plea of not guilty and bail was set. Appellant filed a motion to suppress, and a hearing took place on September 2, 1999.
At the suppression hearing, appellee, the city of Mentor, called Patrolman Richard Slovenkay ("Slovenkay") of the Mentor City Police Department to the stand. He related that on August 15, 1999, he pulled a vehicle over for failure to display a front license plate. William Thornton ("Thornton"), the driver of the car, told Slovenkay that he had lost his license plate and never had a chance to replace it. Slovenkay asked Thornton for his driver's license and issued him a written warning. Prior to issuing the warning, Slovenkay observed that Thornton seemed extraordinarily nervous as his "hands were shaking when he handed [Slovenkay] the license." As Slovenkay conversed with Thornton, he noticed that Thornton broke out in a sweat. Slovenkay asked Thornton if he was ill, and Thornton replied that he was just nervous.
Slovenkay returned to his car and ran Thornton's license through dispatch. As he was doing that, he saw Thornton reach under his seat. Slovenkay explained that he did not feel comfortable walking up to the car again, so he called for backup and asked Thornton "to step out of the car for [his] safety." Slovenkay stated that he patted Thornton down, fearing that he may have a weapon. As Slovenkay continued speaking with Thornton, Slovenkay asked Thornton if he was reaching for anything, to which Thornton stated that "[h]e had nothing to hide and didn't mind if [Slovenkay] searched his car to prove that he had nothing to hide."
Thereafter, Slovenkay went to the passenger's side of the car and asked Thornton's friend, appellant, to exit the vehicle. On cross-examination, Slovenkay revealed that he knew appellant because he had arrested him a couple months earlier for possession of marijuana. However, he also related that he asked appellant to exit the auto based on the consent search given by Thornton. As appellant stepped out of the car, Slovenkay noticed "a very large bulge in his pocket." Once he saw the bulge in appellant's pocket, he feared that appellant may have had a gun. He questioned appellant as to what was in his pocket, and appellant replied that there was nothing in it. Slovenkay then "grabbed [appellant's] hand and did a pat-down for [his] safety for weapons." When he did a pat-down search, he felt a soft substance inside of a plastic bag in the pocket. He testified that based on his experience, he recognized the substance to be marijuana inside of a plastic bag. Slovenkay then placed appellant in handcuffs and continued patting him down. He proceeded to find a different plastic bag in the other pocket, which contained yellowish-brown, dried mushrooms.[1] At the conclusion of the testimony, the trial court overruled appellant's motion to suppress.
On September 27, 1999, appellant entered a plea of no contest and was found guilty on one count of drug abuse. He was fined $250, sentenced to thirty days in jail, and put on probation for nine months. On October 25, 1999, appellant filed a motion to stay execution, which was granted. On that same date, appellant timely filed a notice of appeal from the September 27, 1999 judgment entry and now asserts the following assignments of error[2]:
 "[1.] The trial court erred when it denied [appellant's] motion to suppress evidence that was obtained as a result of a stop and frisk that was unreasonable at its inception.
 "[2.] The trial court erred when it denied [appellant's] motion to suppress evidence that was obtained as the result of a stop and frisk that exceeded the scope of a search for weapons.
 "[3.] The trial court erred when it failed to suppress evidence that was obtained as a result of the state's unlawful search of the automobile in which [appellant] was riding in."
As appellant's assignments of error are interrelated, they will be addressed in a consolidated manner. Appellant contends that the trial court erred by overruling his motion to suppress evidence that was obtained as the result of a stop and frisk that was unreasonable at its inception and which exceeded the scope of a search for weapons. Further, he argues that the evidence was obtained as part of an unlawful search of the automobile in which appellant was a passenger.
In justifying an investigative stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968), 392 U.S. 1, 21. The assessment is to be judged against an objective standard. Id. at 21-22. "`An inarticulate hunch or suspicion is not enough. The officer must have a reasonable belief and specific facts upon which a reasonable suspicion could be based that appellant was violating or about to violate the law. Terry * * * ; Brown v. Texas
(1979), 443 U.S. 47, * * *; Delaware v. Prouse (1979) 440 U.S. 648, * * *.'" State v. Kish (Nov. 5, 1999), Lake App. No. 98-L-148, unreported, at 2, 1999 WL 1073615, quoting Mentor v. Webb (June 30, 1993), Lake App. No. 92-L-158, unreported, at 4. The determination of a reasonable suspicion must be made in light of the totality of the surrounding circumstances. State v. Bobo
(1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
Here, Slovenkay stopped Thornton for failure to display a front license plate. Prior to issuing Thornton a warning, Slovenkay observed that Thornton seemed unusually nervous because his hands were shaking and he broke out in a sweat as he handed over his license. Further, Thornton admitted that he was nervous. Slovenkay returned to his auto and ran Thornton's license through dispatch. As he was doing that, he saw Thornton reach under his seat. Slovenkay asked Thornton to step out of the car and he patted him down, fearing that he may have a weapon. Therefore, when considering the totality of the circumstances, it is our determination that Slovenkay had a reasonable suspicion to initially detain Thornton and appellant after the issuance of the warning regarding the front license plate.
We must next determine if Thornton's and appellant's continued detention was reasonable. It is well-settled law that an officer does not have the authority to automatically conduct a frisk of a detainee when a valid investigative stop has been initiated. Kish, supra, unreported, at 3. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Bobo, 37 Ohio St.3d at paragraph two of the syllabus.
Additionally, a police officer is permitted under certain circumstances to conduct a limited protective search of a detainee's person for concealed weapons. State v. Evans (1993),67 Ohio St.3d 405, 408. The purpose of this limited search is to allow an officer to pursue his or her investigation without fear of violence; it is not intended to provide the officer with an opportunity to ascertain evidence of a crime. Id. The United States Supreme Court sets forth the standard for a "frisk" as follows:
 "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 27.
When police officers are conducting a lawful Terry search for weapons, they may "seize nonthreatening contraband when its incriminating nature is `immediately apparent' to the searching officer through the sense of touch." Evans,67 Ohio St.3d at 414, fn. 5, citing Minnesota v. Dickerson (1993),508 U.S. 366. In Dickerson, the United States Supreme Court wrote:
 "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." Dickerson, 508 U.S. at 375-376.
However, during the search, a police officer is prohibited from handling the object previously determined not to be a weapon in order to establish its incriminating nature. Evans, 67 Ohio St.3d at 414. Once an officer locates contraband, the "immediately apparent" requirement is at issue and must be satisfied. In State v. Halczyszak (1986), 25 Ohio St.3d 301, paragraph three of the syllabus, the Supreme Court of Ohio held that "[t]he `immediately apparent' requirement of the `plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." The United States Supreme Court has characterized probable cause as "a flexible, common-sense standard." Texas v. Brown (1983), 460 U.S. 730,742. In Brown, the Supreme Court further stated that probable cause:
 " * * * merely requires that the facts available to the officer would `warrant a man of reasonable caution in the belief,' * * * that certain items may be contraband * * * ; it does not demand a showing that such a belief be correct or more likely true than false. A `practical, nontechnical' probability that incriminating evidence is involved is all that is required." Id.
Moreover, probable cause must "be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of [the search or] arrest [and] guided by his experience and training."United States v. Davis (D.C. Cir., 1972), 458 F.2d 819,821.
In the case at bar, at the suppression hearing, Slovenkay testified that while he was running a computer check of Thornton's license, he saw Thornton reach under his seat. Fearing that Thornton may have a weapon, Slovenkay patted him down. Slovenkay then asked Thornton if he was reaching for anything, to which Thornton replied that he had nothing to hide and that he did not mind if Slovenkay searched his car. Thereafter, Slovenkay went to the passenger's side of the auto and asked appellant to exit the vehicle. As appellant exited the automobile, Slovenkay noticed a very large bulge in his pocket, which he thought was a gun. He questioned appellant as to what was in his pocket, and appellant replied that it was nothing. Slovenkay conducted a pat-down search of appellant for a weapon for his own safety. He felt a soft substance inside of a plastic bag in the pocket. At that point, Slovenkay stated that based on his experience, he believed the substance in appellant's pocket to be marijuana inside of a plastic bag. He placed appellant in handcuffs and continued patting him down. He then found another plastic bag, which contained yellowish-brown, dried mushrooms.Slovenkay initially did a pat-down search of appellant because he thought the large bulge in his pocket was a weapon. We note that under a Terry pat-down search, an officer is not entitled to reach into a detainee's pockets or ask the detainee to empty his or her pockets on pure speculation that a weapon might be present. See Evans,67 Ohio St.3d at 414-416. Yet, this is not a situation where Slovenkay relied on pure speculation that appellant was carrying a weapon on his person. Rather, upon Slovenkay seeing a large bulge in appellant's pocket, he feared for his safety and decided to conduct a pat-down search to see if it was a weapon. In addition, Slovenkay testified that what he felt in appellant's pocket was immediately apparent as contraband. Hence, because the record demonstrated that the bag of marijuana was immediately apparent to Slovenkay as contraband, its subsequent removal was justified pursuant to the standards set forth in Dickerson. See, also,Kish, supra, unreported; Warren v. Provitt (Oct. 22, 1999), Trumbull App. No. 97-T-0228, unreported. Accordingly, appellant's first, second, and third assignments of error lack merit.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Mentor Municipal Court is affirmed.
 ___________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., concurs, O'NEILL, J., dissents.
[1] The record is unclear as to the actual character of the mushrooms and whether appellant was charged with a drug offense with respect to them.
[2] The case was remanded by this court to the trial court on November 19, 1999, so that the trial court could issue an appropriate judgment entry in compliance with State v. Ginocchio
(1987), 38 Ohio App.3d 105. Subsequently, on December 1, 1999, the trial court issued a proper judgment entry. Thus, appellant's appeal from the September 27, 1999 judgment entry was considered a premature appeal pursuant to App.R. 4(C).