OPINION
In the early morning hours of May 14, 2000, a dispatcher for the Warren City Police Department transmitted a notification that appellant, Gary G. Freeman ("Freeman"), was selling peanuts as crack cocaine, robbing people with a pellet gun, and driving a stolen car.
Later that morning, Officer Robert Massucci, a Warren City Police Officer, was stopped at a traffic light and observed appellant stopped facing him at the same traffic light. Officer Massucci recognized appellant from prior interactions between appellant and the police department. Appellant was driving a white four-door vehicle at the time.Officer Massucci followed appellant and checked the vehicle's plates through the L.E.A.D.S. system. This revealed that the car was not registered to appellant. Officer Massucci then determined that appellant's driver's license was suspended by running his social security number through the system. Officer Massucci then stopped appellant.
When Officer Massucci approached the vehicle to speak to appellant, appellant appeared nervous. Officer Massucci called for backup and asked appellant to remain in the vehicle. When the backup arrived, Officer Massucci requested that appellant exit the vehicle. Officer Massucci conducted a pat down search of appellant's outer clothing, placed appellant under arrest for driving under suspension, and requested that the vehicle be towed.
After placing appellant under arrest, Officer Massucci searched appellant and found a wallet in appellant's jacket pocket, containing identification for one Theodore Toles ("Toles"). Officer Massucci also observed the butt end of a pistol protruding from beneath the driver's seat of the vehicle, which, upon removal, proved to be a pellet gun.
Appellant was transported to the Warren City Police Station for booking. Officer Massucci phoned Toles concerning the wallet, and Toles informed Officer Massucci that he had been robbed and his wallet stolen in Warren Township earlier that evening. Officer Massucci called the Warren Township Police Station, and informed Sergeant Edward Anthony that appellant had been arrested for driving under suspension and that Toles' wallet had been recovered from appellant.
After Sergeant Anthony arrived at the Warren City Police Station, he read appellant his Miranda rights, using the standard Warren TownshipMiranda rights and waiver form. This form has as its title, "YOUR CONSTITUTION [sic] RIGHTS," "NOT UNDER ARREST." As Sergeant Anthony read and explained appellant's Miranda rights to him, appellant initialed the space next to each right, except in the case of the final right, the right to terminate questioning at any time. Appellant did not place his initials next to this right. Appellant printed his name on the signature line under the waiver.
Appellant then gave a statement. In compliance with his request, Sergeant Anthony wrote appellant's statement as he gave it. Appellant read his statement, made changes to it in several places, and signed it. Appellant was indicted and tried on charges of Aggravated Robbery, in violation of R.C. 2911.01(A)(3) (C). The jury returned a guilty verdict, and appellant was sentenced to seven years in prison, with three years of post-release control. Appellant filed the instant appeal raising the following assignments of error:
 "[1.] The trial court erred by denying the appellant's motion to suppress the fruits of an unconstitutional arrest in violation of the fourth and fourteenth amendments of the United States Constitution and Article 1, Sections 14 and 16 of the Constitution of the state of Ohio.
 "[2.] The trial court erred by denying the appellant's motion to suppress statements purportedly made by appellant to police officers.
 "[3.] The appellant's conviction is against the manifest weight of the evidence."
 In his first assignment of error, appellant argues that the wallet found in his pocket and the pellet gun found in the car he was driving should have been suppressed because they followed an unconstitutional arrest. The arrest was unconstitutional, appellant claims, because Officer Massucci did not have probable cause to arrest him. This court has held that:
 "At a hearing on a motion to suppress, the trial court functions as the trier of fact. Thus, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. * * * On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence. * * * After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met." Ohio v. Hrubik (June 30, 2000), Ashtabula App. No. 99-A-0024, 2000 Ohio App. LEXIS 2999, unreported at *4-5.
 A stop is constitutional if either a reasonable suspicion or probable cause supports it. The test for probable cause is: "whether at the moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio (1964), 379 U.S. 89, 91. An officer's observation of any traffic law violation constitutes sufficient grounds to stop the vehicle observed violating the law. Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 11-12. When an officer witnesses a minor traffic violation, the officer is justified in stopping the vehicle for the purpose of issuing a citation. State v. Jennings (Mar. 3, 2000), Trumbull App. No. 98-T-0196, unreported, 2000 Ohio App. LEXIS 800 at *8-9.
In the case sub judice, Officer Massucci had probable cause to stop appellant. Officer Massucci testified that he recognized appellant driving and checked on the status of his driver's license. A check of a person's Bureau of Motor Vehicles records does not implicate Fourth Amendment rights, as it does not involve any intrusion or interruption of travel, or any attempt to restrain or detain him. State v. Begovic (Dec. 5, 1997), Lake App. No. 97-L-041, unreported, 1997 Ohio App. LEXIS 5452 at *9, citing State v. Owens (1991), 75 Ohio App.3d 523, 525.
When Officer Massucci had determined, through the L.E.A.D.S. report, that appellant's driving privileges had been suspended, he had reasonably trustworthy information that appellant was in the process of committing the offense of driving with a suspended license. At this time, Officer Massucci had probable cause to stop appellant and arrest him for that offense.
Once a person is under arrest, "[o]fficers may perform a full search of an arrestee's person regardless of the offense prompting the arrest."State v. Jones (2000), 88 Ohio St.3d 430, 439, citing United States v.Robinson (1973), 414 U.S. 218. Because the search, which recovered Toles' wallet, was performed once appellant was placed under arrest, it did not violate appellant's constitutional rights. As the search was constitutional, the trial court did not err in refusing to suppress the introduction of the wallet as evidence.
Appellant also argues that the pellet gun should be suppressed, because Officer Massucci found it after appellant was taken from the vehicle and handcuffed. Appellant claims that this disqualifies Officer Massucci's removal of the gun from the car as a search incident to a lawful arrest. The trial court found that the gun was in plain view on the floor of the vehicle.
Under the doctrine of plain view, a police officer may seize an item without a warrant if the initial intrusion was lawful, and the incriminating nature of the item was immediately apparent. State v.Waddy (1992), 63 Ohio St.3d 424, 442, quoting Coolidge v. New Hampshire
(1971), 403 U.S. 443, 466. "The `immediately apparent' requirement of the `plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." State v. Halczyszak (19860,25 Ohio St.3d 301, paragraph three of the syllabus. This association may arise from the character of the item itself or from the circumstances in which the item was found. Id. at 304-305.
Additionally, this probable cause must "be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of [the search or] arrest guided by his experience and training." United States v. Davis (1972), 458 F.2d 819, 821.
In the case sub judice, Officer Massucci testified that, when appellant exited the vehicle, he could see the butt of a gun protruding from under the driver's seat of the car. Officer Massucci's intrusion was lawful; he had probable cause to stop the vehicle appellant was driving and arrest appellant for driving under suspension. The gun was also immediately incriminating. Officer Massucci testified that he had received notice that appellant had been robbing people with a pellet gun earlier that evening, giving him probable cause to associate this pellet gun with crimes. Furthermore, based on Officer Massucci's testimony as to the gun's position under the driver's seat and the fact that it was not visible until appellant exited the car, Officer Massucci had probable cause to believe that the gun was evidence of appellant's possession of a concealed weapon, contrary to R.C. 2923.12. See, e.g. State v. Potts
(Sept. 25, 1988), Trumbull App. No. 97-T-0038, unreported, 1998 Ohio App. LEXIS 4542. Because Officer Massucci testified that the pellet gun was in plain view, and the evidence supports that conclusion, appellant's constitutional rights were not violated and the trial court did not err in refusing to suppress the pellet gun. Appellant's first assignment of error is without merit.
In appellant's second assignment of error, he claims that he did not knowingly and voluntarily waive his rights because: he did not initial next to one of the rights listed on the Miranda waiver form; he printed his name on the signature line of the waiver form, rather than writing it in cursive script; and he asked whether he needed a lawyer before making his statement.
"[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized."Miranda v. Arizona (1966), 384 U.S. 436, 478. To protect the privilege against self-incrimination, the authorities must warn the individual prior to any questioning "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Id. at 479.
At the suppression hearing, Sergeant Anthony testified that he gave appellant the Miranda form, and read each item on the form to appellant. Sergeant Anthony also testified that appellant asked questions and that he explained things to appellant. Appellant placed his initials after each right read to him except the right to terminate questioning, then he signed the waiver language at the bottom of the page.
Appellant argues that the fact that he did not initial on the form next to the right to terminate questioning shows that he did not understand his rights. Sergeant Anthony testified, however, that he read and explained each right on the form to appellant. Miranda does not require the detainee's initials on a written form; an oral Miranda warning is sufficient. There is sufficient evidence for the trial court, weighing the credibility of Sergeant Anthony's testimony, to have found that appellant was properly informed of his Miranda rights prior to questioning.
However, the state must also show that appellant voluntarily and knowingly waived his Miranda rights. Appellant argues that he did not knowingly and voluntarily waive his rights because he printed his name on the signature line of the waiver form, rather than wrote it in cursive script, and because, while he was being read his rights, appellant asked if he needed an attorney.
"An express written or oral statement of waiver * * * is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." State v. Scott (1980),61 Ohio St.2d 155, paragraph one of the syllabus; citing Miranda andNorth Carolina v. Butler (1979), 441 U.S. 369.
Initially, we must consider the validity of the written waiver form, on which appellant printed his name in the signature line. Appellant argues that, because the name was printed and not written in cursive, the waiver is not valid. While it has been held that, for declarations of candidacy in a primary election, signatures must be in cursive, see State ex rel.Green v. Casey (1990), 51 Ohio St.3d 83, 85, we can find no similar rule for signatures on other documents, including Miranda waivers. Thus, the trial court could reasonably have concluded that appellant's signature, following the waiver language on the Miranda form, constituted a knowing and voluntary waiver of his rights.
Furthermore, even if the express written waiver were not valid, the court is required to examine the totality of the circumstances to determine whether appellant's statement was knowing and voluntary. Statev. Edwards (1976), 49 Ohio St.2d 31. In addition, the court stated that:
 "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Id. at paragraph two of the syllabus.
 At the time of appellant's statement, he was twenty-five years old, could both read and write, and had prior encounters with the police. Sergeant Anthony indicated in his testimony at the suppression hearing that he made no promises or offers to appellant to coerce his statement, and that he simply asked appellant if he wanted to make a statement, and appellant responded that he did. Thus, we conclude that appellant's statement was voluntary under the totality of the circumstances.
Appellant also argues that his statement should be suppressed because he asked Sergeant Anthony whether he should have a lawyer. As recounted by Sergeant Anthony at the suppression hearing, after appellant asked whether he should have a lawyer, Officer Anthony answered, "[t]hat's your right, * * * [y]ou want to have an attorney present, you want to stop any questioning at this time, you can." After this discussion, appellant proceeded to sign the waiver form and give his statement.
The United States Supreme Court has held that:
 "[I]f the suspect effectively waives his right to counsel after receiving the Miranda warnings, law enforcement officers are free to question him. * * * But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." Davis v. U.S. (1994), 512, U.S. 452, 458.
 However, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking his right to counsel, our precedents do not require the cessation of questioning." Id. at 459. Thus, if the question is not an unambiguous request for counsel, the officers are not required to cease questioning. Id.
In the case sub judice, the evidence indicates that appellant merely asked Sergeant Anthony if he should have a lawyer. In response to that question, Sergeant Anthony correctly informed appellant that he had a right to a lawyer, and that he could stop the questioning at any time, if he wished. Appellant did not unambiguously request to have counsel present, and thus did not invoke his right to counsel. Because appellant did not invoke his right to counsel, Sergeant Anthony was not required to cease questioning him. Appellant's second assignment of error is without merit.
In appellant's third assignment of error, he argues that the jury's verdict was against the manifest weight of the evidence. Appellant argues that, even if the wallet, pellet gun, and appellant's statement were not suppressed, these pieces of evidence, coupled with Toles' description of his assailants, are not sufficient to overcome a manifest weight challenge.
When a court reviews a verdict to determine whether it is against the manifest weight of the evidence, it:
 "[W]eighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 Even though Toles was unable to positively identify appellant as his assailant and the pellet gun in evidence as the gun that was used in the robbery, the jury's verdict is not against the manifest weight of the evidence. First, appellant was found in possession of Toles' wallet and just over $300 in cash. Appellant was also found in possession of a pellet gun very similar to the gun described by Toles as the one used in the robbery. In his brief, appellant argues that the state's evidence did not rule out the possibility that someone may have given him the wallet and gun after the robbery. Although there was no evidence presented to show that this in fact happened, it is true that the jury could conceivably have come to that conclusion. It is also a reasonable inference from those facts that appellant was involved in the robbery. The fact that the jury made the more likely inference and did not make the speculative inference does not show that the jury lost its way.
Even without the evidence of the wallet and the gun, appellant's conviction is still not against the manifest weight of the evidence. In appellant's statement, he admits that he "pulled out a gun (black pellet gun)," and that he "ask [sic] old man Toles `where's the money at'?"[sic]. This is essentially an admission that appellant committed aggravated robbery.
Appellant argues that the statement is not reliable because Sergeant Anthony wrote the statement as appellant gave it to him, and then appellant read the statement and made changes to it. Appellant changed the statement to indicate that "his friend" hit Toles with "my fist" and that his friend also hit Toles with the gun. Considering the statement's earlier reference to appellant holding the gun, and the reference to "my fist," it is clearly reasonable for the jury to have weighed the credibility of the statement and concluded that appellant, in fact, struck Toles with the gun. Thus, the evidence in this case weighs in favor of appellant's conviction; this is not an "exceptional case" where the evidence weighs heavily against the jury's verdict. Appellant's third assignment of error is without merit.
For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed.
CHRISTLEY, P.J., GRENDELL, J. concur.