OPINION
{¶ 1} Appellant, Steven A. Mihely, appeals the October 30, 2001 judgment entry of the Ashtabula County Court, Eastern Division, overruling his motion to suppress.
 {¶ 2} On November 17, 2000, appellee, the state of Ohio, filed a citation issued to appellant with the trial court. Appellant was cited for failure to yield to a stop sign, a minor misdemeanor, in violation of R.C. 4511.43, and for failure to wear his safety belt, also a minor misdemeanor, in violation of R.C. 4513.263. On that same date, appellee also filed a criminal complaint charging appellant with one count of marijuana possession, a minor misdemeanor, in violation of R.C. 2925.11. On December 5, 2000, appellant entered a plea of not guilty to the charges.
 {¶ 3} On January 22, 2001, appellant filed a motion to suppress any and all of the evidence from the alleged unconstitutional search and seizure. Appellee filed a response to the motion to suppress on April 2, 2001. A suppression hearing took place on that same date. State Trooper David L. Robison ("Trooper Robison") of the Ohio State Highway Patrol testified that on November 14, 2000, while on routine patrol, he was traveling westbound on State Route 307. He observed a vehicle approach a stop sign, and "it did one of those slow rolling and never came to a complete stop and as they made the turn [he] viewed both the front seat passengers were not wearing seat belts." At that point, he initiated a traffic stop for failure to stop for the stop sign and for failure to wear a safety belt. Trooper Robison asked appellant, who was the driver of the auto, for his operator's license, registration and insurance, but he was unable to produce the information. Trooper Robison requested that appellant step out of the car in order to verify his identity through the computer and confirm that he had a license.
 {¶ 4} After appellant stepped out of the vehicle, he and Trooper Robison conversed. Trooper Robison testified that he explained to appellant that he was going to place appellant in his police cruiser, and at that time, he asked appellant if he had any "bombs or hand grenades on [his] person, or weapons * * *." Trooper Robison then asked if he could pat down appellant to make sure there were no weapons, and appellant agreed. As Trooper Robison conducted the pat down, he "could feel a big bulge and * * * a plastic baggy and just from touching it [he] knew that there was marijuana in it so [he] said to [appellant] about that and [had appellant pull] out a big wad of money at first and [appellant said] this is all that it is and [Trooper Robison] told him at that point, no that is not what [he] wanted, that wasn't the bag that [he] had felt even though he did have that in a pocket, [he] could tell the other bag was still in there." At that point, appellant "dropped his head and he [said] it's my dope." Trooper Robison explained that when he first put his hand on the bag he "could feel the stems that were in it." He seized the bag from appellant and conducted a search of the vehicle. Appellant was then cited.
 {¶ 5} Trooper Robison also stated that when he looked at him he "did see the bulge in his pocket." He explained that the purpose of the pat down was because appellant was going to enter the police cruiser. Trooper Robison indicated that when he was "patting [appellant] down and [he] could feel it * * * [he] knew that it wasn't a weapon, so [he] knew at that point that was no danger to [him], so [he] continued his pat down when [he] got done with it that is when [he] said to him, may I have the bag of marijuana that is in your pocket."
 {¶ 6} Appellant took the stand and related that he and Trooper Robison were walking and Trooper Robison pointed to his pocket "and he goes what do you got in your pocket and [appellant] said money and then [appellant] pulled out [his] money and then [Trooper Robison] reached and just grabbed it, he didn't give [appellant] a pat down at that time he just grabbed [appellant's] pocket and goes what's that."
 {¶ 7} In a judgment entry dated October 23, 2001, the trial court overruled appellant's motion to suppress in both cases. Thereafter, on October 30, 2001, appellant withdrew his guilty plea and entered a plea of no contest to the charges. On that same date, appellant was found guilty, his license was suspended for a period of one hundred eighty days, and he was fined $100. The trial court also denied appellant's request for occupational driving privileges. Appellant timely filed the instant appeal and now assigns the following as error:
 {¶ 8} "[1.] The trial court erred in denying [a]ppellant's [m]otion to [s]uppress evidence seized in an improper Terry `pat down' search.
 {¶ 9} "[2.] The trial court erred in failing to rule R.C. 2925.11(E)(2) unconstitutional when a court is required to suspend a [person's] driver's license for a minor misdemeanor drug offense."
 {¶ 10} For his first assignment of error, appellant posits that the trial court erred in overruling his motion to suppress.
 {¶ 11} It is well-established that an officer's observation of any traffic law violation constitutes sufficient probable cause to stop the vehicle observed violating such law. Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12. Here, Trooper Robison testified that he observed appellant's vehicle fail to yield at a stop sign. Hence, it is our determination that he had sufficient probable cause to stop the car.
 {¶ 12} We must next conclude if a continued detention was reasonable. An officer does not have the authority to automatically conduct a frisk of a detainee when a valid traffic stop has been initiated. State v. Kish (Nov. 5, 1999), 11th Dist. No. 98-L-148, 1999 WL 1073615, at 3. However, a police officer is permitted under certain circumstances to conduct a limited protective search of a detainee's person for concealed weapons. State v. Evans (1993), 67 Ohio St.3d 405,408. The purpose of this limited search is to allow an officer to pursue an investigation without fear of violence; it is not intended to provide the officer with an opportunity to ascertain evidence of a crime. Id. When police officers are conducting a lawful Terry search for weapons, they may "seize nonthreatening contraband when its incriminating nature is `immediately apparent' to the searching officer through his sense of touch." Id. at 414, fn. 5, citing Minnesota v. Dickerson (1993),508 U.S. 366, 375. During the search, officers are prohibited from handling an object previously determined not to be a weapon in order to establish its incriminating nature. Id. In Dickerson, the United States Supreme Court wrote:
 {¶ 13} "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." Dickerson, 508 U.S. at 375-376.
 {¶ 14} Once an officer locates contraband, the "immediately apparent" requirement is at issue and must be satisfied. In State v.Halczyszak (1986), 25 Ohio St.3d 301, paragraph three of the syllabus, the Supreme Court of Ohio held that "[t]he `immediately apparent' requirement of the `plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." The United States Supreme Court has characterized probable cause as "a flexible, common-sense standard." Texas v. Brown (1983), 460 U.S. 730, 742. InBrown, the Supreme Court further stated that probable cause:
 {¶ 15} "* * * merely requires that the facts available to the officer would `warrant a man of reasonable caution in the belief,' * * * that certain items may be contraband * * *; it does not demand any showing that such a belief be correct or more likely true than false. A `practical, nontechnical' probability that incriminating evidence is involved is all that is required." (Citations omitted.) Id.
 {¶ 16} Moreover, probable cause must "be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of [the search or] arrest [and] guided by his experience and training." United States v. Davis (D.C. Cir., 1972), 458 F.2d 819, 821.
 {¶ 17} In the case sub judice, Trooper Robison indicated at the suppression hearing that he had appellant exit the auto as appellant had no license, registration or insurance. He asked appellant if he could perform a pat down for his own safety before he placed appellant in his cruiser, and appellant agreed. Trooper Robison felt a bulge in appellant's pocket and based on his experience, it was apparent to Trooper Robison that appellant had a substance in a plastic bag. He believed the substance in appellant's pocket to be marijuana inside of a plastic bag. Therefore, based on his testimony, when he performed the pat down, the large bulge was immediately apparent as contraband. Hence, because the record demonstrated that the marijuana was immediately apparent to Trooper Robison as contraband, its subsequent removal was justified pursuant to the standards set forth in Dickerson. Appellant's first assignment of error lacks merit.
 {¶ 18} Under his second assignment of error, appellant argues that the trial court erred in failing to rule that R.C. 2925.11 was unconstitutional when a court was required to suspend a person's driver's license for a minor misdemeanor drug offense. Specifically, appellant alleges that R.C. 2925.11 is an arbitrary and unreasonable exercise of the General Assembly's police power.
 {¶ 19} A statute enjoys strong presumption of constitutionality.State v. Cook (1998), 83 Ohio St.3d 404, 409. "[S]tatutes enacted in Ohio are presumed to be constitutional. * * * This presumption of constitutionality remains unless it is proven beyond a reasonable doubt that the legislation is clearly unconstitutional." State v. Williams
(2000), 88 Ohio St.3d 513, 521. Appellant presents no arguments that approach this burden. Therefore, the trial court did not err in failing to rule that R.C. 2925.11(E)(2) was unconstitutional. Appellant's second assignment of error is without merit.
 {¶ 20} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court, Eastern Division, is affirmed.
WILLIAM M. O'NEILL, P.J., DIANE V. GRENDELL, J., concur.